UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PATRICIA BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     4:15 CV 678 JMB |
| | ) |
| CAROLYN COLVIN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Patricia Barnes, ("Plaintiff") appeals the denial of her application for disability benefits under Title XVI of the Social Security Act. 42 U.S.C. § 401 *et seq*. Because the final decision of the Commissioner of Social Security ("Commissioner") is supported by substantial evidence, as explained below, it is affirmed.[1]

### I. Procedural and Factual Background

Plaintiff is a 45 year-old woman who alleges disability due primarily to schizophrenia. (Tr.[2] 58) Plaintiff applied for supplemental security income ("SSI") on June 12, 2012, but her initial application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ") to contest that decision. (Tr. 67, 78)

Plaintiff appeared (with counsel) and testified at that hearing on December 4, 2013. (Tr. 36-57) The ALJ issued an unfavorable decision one week later, and Plaintiff subsequently sought review before the Appeals Council. (Tr. 8-23, 7) The Appeals Council declined to review the ALJ's decision. (Tr. 1-6) Plaintiff has exhausted administrative remedies, and the matter is properly before this Court.

---

[1]     This Court has jurisdiction over the matter under 42 U.S.C. § 405(g), along with the consent of the parties, pursuant to 28 U.S.C. § 636(c).
[2]     "Tr." stands for the transcript of the administrative record filed by the Defendant. (ECF No. 13)

Plaintiff alleges that she is disabled primarily due to schizophrenia, and that this condition subjects her to continuous auditory hallucinations and paranoia. (Tr. 43, 45) Plaintiff claims she hears "voices" all the time. (Tr. 43) These voices apparently preclude her from concentrating and focusing, and make her "scared" to go out in public. (Tr. 45) Plaintiff acknowledged to the ALJ during her hearing that her "hallucinations" started after she began smoking a mixture of marijuana and embalming fluid, and that she continued to smoke the mixture after the symptoms started. (Tr. 48) Plaintiff also has a history of crack cocaine use and alcohol abuse. (Tr. 234, 242) Plaintiff now claims, however, that she stopped using illegal drugs "a couple years ago," as a result of an outpatient drug rehab program at Queen of Peace. (Tr. 48)

Plaintiff has seen multiple mental health professionals in the last several years, including Dr. Syed Raza, M.D., at Hopewell Psychiatric Services. Dr. Raza initially evaluated Plaintiff for psychological functioning in May of 2012. (Tr. 222-23) At this time, Plaintiff was not taking her antipsychotic medications, and yet Dr. Raza found moderate symptoms, including "rocking" through the session, a Global Assessment of Functioning ("GAF") score of 55, and fair concentration.[3] (Tr. 223)

Plaintiff's symptoms were mixed for the next year. For example, in June of 2012, Plaintiff was admitted to Centre Pointe Hospital for paranoid schizophrenia with active auditory hallucinations, and upon admission, had a GAF of 50. A few months later, during a consultative exam requested by the state agency, however, Dr. Lenora Brown, Ph.D., found only moderate limitations in activities of daily living and social functioning. (Tr. 245) Dr. Brown noted no impairment in appearance and Plaintiff's ability to care for her personal needs, and found Plaintiff's concentration, persistence and pace to be "fair." (Id.)

---

[3] The GAF is a numeric scale ranging from 0-100 used to rate social, psychological and occupational functioning. See Pate-Fires v. Astrue, 564 F.3d 935, 937, n. 1 (8th Cir. 2009). A score of 55 is in the range of "moderate" symptoms.

Plaintiff's treatment records at Hopewell from April, 2012 until at least October, 2013, continued to demonstrate this mixed record of psychiatric symptoms. The mixed record follows the inconsistent level of compliance that Plaintiff maintained in her medication regime. (Tr. 254, 256) At her worst, Plaintiff had a GAF of 40, after she was released from a short stay in jail for drug possession in July of 2013. (Tr. 267-68) At that time, she did not follow up with treatment or medication management. By October of 2013, however, Plaintiff was attending psychiatric appointments regularly, and was compliant with medications. Her GAF rose to 70, indicating mild symptoms. (Tr. 246-47)

Plaintiff also alleges that hypertension and obesity contribute to her inability to work, but the ALJ thought these impairments were relatively minor in terms of their contribution to her residual functional capacity. (Tr. 17) Plaintiff alleges knee pain, secondary to her obesity, but an x-ray in June of 2012 revealed only minor effusion, with no severe subluxation or fracture of the knee. Plaintiff effectively treats this knee pain with over-the-counter Aleve. (Tr. 16) Plaintiff exhibits high blood pressure when not compliant with her hypertension medications. For example, in November of 2013, a doctor at Grace Hill noted her blood pressure was "extremely high, but patient is not on any medication." (Tr. 292) (See also Tr. 272) (blood pressure is 111/78 when taking her medications on 7/31/2012); (but see Tr. 288) (blood pressure 190/119 on 11/14/2013, when she stopped taking her medications)

There are two main pieces of opinion evidence relevant to Plaintiff's disability. First, Kyle Devore, Ph.D., compiled an analysis based on the psychiatric review technique and mental residual functional capacity ("RFC") completed in this case. (Tr. 61-67) Second, Dr. Raza completed a mental RFC in January of 2014, after the initial hearing decision in this case. Dr. Raza found severe limitations, which effectively preclude Plaintiff from full-time work. (Tr.

301-06) Plaintiff submitted this new evidence from Dr. Raza to the Appeals Council. Although it is clear that the Appeals Council considered this new information, it left the unfavorable decision of the ALJ intact. (Tr. 1-2, 4-5) These two pieces of evidence are crucial to the propriety of the Commissioner's decision, and the Court will address them in more detail below.

## II.     Issues Before the Court

The ultimate issue before the Court is whether the decision of the Commissioner to deny Plaintiff's benefits is supported by substantial evidence. The specific issues contested by the parties are: (1) whether the RFC found by the ALJ is supported by sufficient medical evidence;[4] (2) whether the ALJ proffered a legally sufficient reason for finding no exertional limitations when he found that Plaintiff suffered from hypertension and obesity; and (3) whether "new" medical evidence, adduced after the original hearing, undermines this Court's confidence in the Commissioner's decision.

## III.    Standard of Review and Analytical Framework

"To be eligible for SSI benefits, [Plaintiff] must prove that she is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his

---

[4]     The ALJ found that Plaintiff retains the RFC "to perform a full range of work at all exertional levels, but with the following non-exertional limitations: [Plaintiff] is limited to simple, repetitive and routine tasks with only occasional contact with supervisors, co-workers. [Plaintiff] should be given tasks requiring reading or writing at the sixth grade level or lower, can have no strict production standards and should [be] limited to working with things rather than people." (Tr. 15)

previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, the ALJ follows a five-step process in determining whether a claimant is disabled. "During this process the ALJ must determine: '1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not 5) whether the claimant can perform any other kind of work.'" Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015) (quoting Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006)). "If, at any point in the five-step process the claimant fails to meet the criteria, the claimant is determined not to be disabled and the process ends." Id. (citing Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005)); see also Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same).

5

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ;
2. Plaintiff's vocational factors;
3. The medical evidence from treating and consulting physicians;
4. Plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;
5. Any corroboration by third parties of Plaintiff's impairments;
6. The testimony of vocational experts when required, including any hypothetical questions setting forth Plaintiff's impairments.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## IV.  Discussion of Issues

The relevant issues in this matter are noted above. After reviewing the record and the arguments of the parties, this Court concludes: (1) the RFC finding of the ALJ is supported by sufficient medical evidence; (2) the ALJ properly analyzed the limitations resulting from

Plaintiff's hypertension/obesity; and (3) the new evidence is not sufficient to undermine this Court's confidence in the Commissioner's ultimate decision.

### A. Plaintiff's Credibility

Before discussing the issues articulated above, this Court will analyze the ALJ's treatment of Plaintiff's credibility, because that question is inextricably intertwined with many, if not all, of the issues articulated by the parties.

In evaluating Plaintiff's credibility regarding the extent of her symptoms, the ALJ was required to: (1) determine whether there is an underlying medically determinable physical or mental impairment that can reasonably be expected to produce her symptoms; and then (2) evaluate Plaintiff's allegations concerning severity by using objective medical evidence, and the factors laid out in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). In this case, the ALJ found Plaintiff "not entirely credible." (Tr. 16)

The ALJ's treatment of Plaintiff's credibility was in accordance with the law. First, the ALJ specifically enumerated all of the Polaski factors, and discussed many of them. (Tr. 15) See Partee v. Astrue, 638 F.3d 860, 865 (8th Cir. 2012) ("The ALJ is not required to discuss methodically each Polaski consideration, so long as he acknowledged and examined those considerations before discounting [Plaintiff's] subjective complaints."). The ALJ noted that Plaintiff did not allege any side effects of medication, or any alleviating or aggravating factors associated with her mental and physical limitations. (Tr. 15) The ALJ also noted that Plaintiff admitted that the voices "calmed down when she was taking her medications." (Tr. 16) Additionally, medications substantially alleviate her hypertension issues, and Plaintiff takes only Aleve for her knee pain, as noted above. Evidence of effective medications, resulting in symptom relief, is an acceptable basis upon which to discount Plaintiff's credibility. Guilliams

7

v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005).  Also, Plaintiff was sometimes non-compliant with treatment.  (Tr. 224-25, 227, 234)  Failure to follow a recommended course of treatment also weights against a plaintiff's credibility.  See Gowell v. Apfel, 242 F.3d 793, 797 (8th Cir. 2001); see also Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001).[5]

Second, the ALJ relied on objective medical evidence to support his finding that Plaintiff's allegations regarding severity were not fully credible.  For instance, Dr. Brown's examination of Plaintiff revealed only moderate limitations in activities of daily living, social functioning, and occupational domains.  (Tr. 241-45)  The ALJ also noted that x-rays suggested that Plaintiff's knee issues were not severe, and there were "no signs" of serious impairment due to hypertension or obesity.  (Tr. 17)  These objective medical findings are inconsistent with Plaintiff's allegations of debilitating symptoms.  Additionally, the objective medical evidence demonstrates that Plaintiff's impairments improved dramatically when she was compliant with treatment.  (See Tr. 227, 247) (demonstrating an increase in Plaintiff's GAF score from 40 to 70 when Plaintiff is compliant with treatment)

The ALJ's treatment of Plaintiff's credibility satisfies the requirements of Polaski.  The ALJ used the correct analysis, and substantial evidence supports his findings.  Thus, it is entitled

---

[5] The parties dispute the importance of Plaintiff's non-compliance with prescribed treatment.  Defendant argues that this is a reason to discount Plaintiff's credibility.  (ECF No. 15 at 8)  Plaintiff speculates that it "is not at all clear the decision considered that the plaintiff's mental impairment may have affected her ability to in fact take her medicines on a complaint [sic] basis."  (ECF No. 14 at 9)  The Court notes that where a mental illness is the *cause* of non-compliance, then non-compliance cannot be used against a plaintiff.  See Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009).  Here, however, Plaintiff simply speculates that her underlying illness may be the cause of her non-compliance.  But it is Plaintiff's burden to prove that she is disabled, and thus, it is her burden to prove that she cannot take her medications because she is so disabled.  Plaintiff's mere speculation as to causation is not enough.  Moreover, the record indicates that Plaintiff was well-aware of her need to take the medications.  See (Tr. 268) ("[Plaintiff] has been engaged in treatment for the past year and is motivated to remain engaged to address her mental health stability … [Plaintiff] has identified her primary goal as continuing to attend appointments, take medication and talking with the doctor about presenting problems, symptoms, and side effects.").  Additionally, the record shows that Plaintiff has a history of ability to take her medications as prescribed on an ongoing basis and regularly show up for mental health checkups.  (See Tr. 246-60)

to deference by this Court. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) ("Where adequately explained and supported, credibility findings are for the ALJ to make.").[6]

## B. Medical Evidence Supporting the RFC

Plaintiff argues that the ALJ's RFC determination is not supported by sufficient medical evidence, in violation of Singh v. Apfel, 222 F.3d 448 (8th Cir. 2000) and Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001). The Commissioner argues that it is Plaintiff's burden, and not the Commissioner's, to prove Plaintiff's RFC. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

"RFC is defined as the most a claimant can do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (internal quotations omitted). "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC …. However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." Id.

Plaintiff cites the cases of Singh and Lauer for the proposition that an RFC finding is a medical determination, and that the RFC must be based on at least *some* medical evidence. See

---

[6] The Court notes that there was a third party function report filled out by Plaintiff's cousin, which the ALJ did not discuss in his credibility findings. (Tr. 189-196) Normally, an ALJ should discuss third party testimony when it is relevant to a plaintiff's disability. See Polaski, 739 F.2d at 1322 ("The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including … observations by third parties … ."). But "an ALJ is not required to discuss every piece of evidence submitted." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). In this case, the Court is convinced that failure to specifically acknowledge this piece of evidence is not reversible error, because the ALJ otherwise specifically articulated lawful reasons for discounting Plaintiff's credibility, and the third party report does not shed new light on Plaintiff's symptoms. Additionally, that report is often cast in conclusory terms where it points to severe limitations. In other places, however, the third party report provides evidence supporting the ALJ's conclusion that Plaintiff was not severely limited. See, e.g., Tr. 191-94, where the third party says Plaintiff: spends her days watching television and playing cards with friends; goes outside "frequently;" goes shopping on her own, prepares meals, pays bills, and attends church and church functions "3 or 4" times a month. These are indicative of impairments in daily living that are less than "severe." Cf. Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) (holding that daily activities such as bill paying, laundry, cooking, and caring for a plaintiff's own special needs children is incompatible with allegations of complete disability).

Singh, 22 F.3d at 451 ("[Plaintiff's RFC] is a medical question."); Lauer, 245 F.3d at 704 ("[S]ome medical evidence must support the determination of [Plaintiff's] RFC."). Plaintiff's argument is correct, as far as it goes. But as explained below, the ALJ did in fact adduce sufficient medical evidence to fashion an RFC.

As an initial matter, there is no dispute in this case regarding the ALJ's articulation of Plaintiff's severe impairments, including hypertension, obesity, psychotic disorder and substance addiction. (Tr. 13) Further, the ALJ did not include any substantial exertional limitations in Plaintiff's RFC.[7] Regarding Plaintiff's non-exertional limitations resulting from her psychotic disorder, there was ample objective medical evidence to support the ALJ's determination. For example, the RFC reflects consistent GAF scores between 55 and 70. (Tr. 223, 247, 251, 253, 257) Such scores are indicative of moderate symptoms. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005). These scores are also inconsistent with findings of disability. Id.

Additionally, Dr. Brown's evidence supports the ALJ's determination. As noted above, Dr. Brown performed a psychological evaluation of Plaintiff in September of 2012. Dr. Brown found: (1) a GAF of 60; (2) Plaintiff was only moderately impaired in her ability to perform the activities of daily living; (3) she was moderately impaired in social functioning; (4) she had no impairment in her ability to care for personal needs; (5) and she was only moderately impaired in her "ability to function in the occupational domain." (Tr. 245-46)

Finally, Kyle Devore, Ph.D., compiled an analysis of the medical records and issued an opinion. (Tr. 58-67) Dr. Devore thought Plaintiff was only *moderately* limited in: (1) the ability to understand, remember, and carry out detailed instructions; (2) the ability to attend and concentrate on tasks; (3) the ability to complete an ordinary workday or work week without

---

7     The medical evidence supporting the portion of the RFC dealing with physical limitations, as opposed to mental limitations, is discussed in the next section, below.

interruption from psychological symptoms; and (4) to accept criticism from supervisors and to interact appropriately with the public. Dr. Devore also found Plaintiff moderately limited in carrying out activities of daily living, social functioning and concentration, persistence, and pace.

The ALJ noted, and this Court agrees, that these findings by Dr. Devore are generally consistent with the other objective medical evidence before the ALJ. (Tr. 17-18) The findings of Drs. Brown and Devore provide substantial medical evidence to support the ALJ's findings. See Kamann v. Colvin, 721 F.3d 945, 951 (8th Cir. 2013) (finding that substantial evidence supports an ALJ's RFC finding where the ALJ reviewed the medical evidence on record and issued a finding consistent with the reviewing agency psychologist).

### C. **Plaintiff's Limitations Resulting from Hypertension/Obesity**

Plaintiff next argues that the ALJ's decision fails to articulate a legally sufficient rationale for finding Plaintiff's hypertension and obesity are severe impairments, and yet finding no exertional limitations in the RFC. While Plaintiff's argument has some superficial appeal, it is actually a red herring. The relevant inquiry is whether there is evidence of any limitations resulting from Plaintiff's hypertension and obesity, and how those limitations impact Plaintiff's ability to work. See Collins ex rel. Williams v. Barnhart, 335 F.3d 726, 731 (8th Cir. 2003) (holding that "the dispositive question remains whether [Plaintiff's] functioning in various areas is markedly impaired"). Here, it is clear that the ALJ found that there were no material limitations imposed by these two physical conditions. And there is substantial evidence to support that conclusion.

First, no doctors found or ever suggested that Plaintiff's hypertension or obesity imposed any exertional limitations. (Tr. 17) The ALJ reasoned that there "is no record of physical therapy, narcotic medications or surgical interventions on the knee." (Tr. 16) Indeed, what

11

treatment Plaintiff did receive for these severe impairments was very conservative. Plaintiff was prescribed Lisinopril for the hypertension, and, as discussed above, took over-the-counter Aleve for knee pain resulting from obesity. See Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993) (noting that a treating physician's conservative treatment was inconsistent with the claimant's assertions of disabling pain); see also Goodale v. Halter, 257 F.3d 771, 774 (8th Cir. 2001) (holding that where claimant took nothing stronger than vitamins and aspirin, that fact was inconsistent with complaints of disabling pain).

Second, Plaintiff herself denied any limitations in lifting, sitting, standing, or any other exertional activity. On May 31, 2012, she reported to Dr. Raza that she "is physically healthy." (Tr. 258) In her Function Report, Plaintiff denied any limitations in lifting, sitting, standing, or any other exertional activity—she only alleged non-exertional limitations. (Tr. 182) Consistent with Plaintiff's representations, at the hearing, Plaintiff's attorney agreed with the ALJ that this case was "predominantly a mental case." (Tr. 51)

Third, the available objective medical evidence does not support a finding of severe physical limitations. As relates to her knee issue, an x-ray in June of 2012 revealed only some minor effusion, with no severe subluxation or fracture of the knee. (Tr. 16) As it relates to her hypertension, objective medical evidence supports that she does have high blood pressure, but as discussed above, it is well-controlled within normal range when she takes her medications. (See Tr. 272) (blood pressure is 111/78 when taking her medications on 7/31/2012)

In short, Plaintiff does not allege any functional limitations relating to her hypertension and obesity, and no objective medical evidence or medical opinion evidence supports any such limitations. Therefore, the ALJ's determination of Plaintiff's RFC, as it relates to her severe physical impairments, is supported by substantial evidence in the record as a whole.

### D. The New Medical Evidence

Finally, Plaintiff argues that this Court should reverse the Commissioner's decision in light of Dr. Raza's new mental RFC finding debilitating limitations on Plaintiff's ability to work. Dr. Raza's opinion was submitted after the original hearing decision in this case.

Where new evidence is presented to the Appeals Council that was not presented to the ALJ, and the Appeals Council affirms the ALJ's decision, this Court must first ensure that the Appeals Council has reviewed that new evidence. If it has, then this Court must decide whether the ALJ's determination is supported by substantial evidence, including the new evidence submitted on appeal. This may include speculating as to how the ALJ would have treated the new evidence. See Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994) ("[W]e must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing.").

It is clear that the Appeals Council considered the new evidence, because the Notice of Appeals Council Action so stated. (Tr. 1, 4-5) Thus, this Court must determine whether—in light of the new evidence—substantial evidence would continue to support a finding of no disability.

The Court concludes that, despite the new evidence, substantial evidence continues to support the conclusion that Plaintiff is not disabled. As an initial matter, Dr. Raza's new opinion evidence would not be entitled to controlling, or even substantial weight. Dr. Raza's new opinion is inconsistent with his own treatment notes, and with other substantial evidence in the case. See Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir. 2015) (noting that where a treating physician's opinion is inconsistent with his own treatment notes, it is not entitled to controlling or substantial weight). For example, Dr. Raza's opinion that Plaintiff is disabled is inconsistent

with her well-documented GAF scores, and for that reason, should be discounted.  See Goff, 421 F.3d at 791 (holding that a GAF of 58 was inconsistent with a treating psychiatrists' opinion of disability, and that the psychiatrist's opinion was therefore properly discounted).  Also, Dr. Raza speculates that Plaintiff's medications could cause multiple problems, such as dizziness, drowsiness, and fatigue. (Tr. 301)  Yet Plaintiff never even alleged such issues.

Additionally, the Commissioner rightly points out several internal inconsistencies within Dr. Raza's opinion.  First, Dr. Raza says that Plaintiff has serious limitations in making simple decisions, yet she can manage her own benefits.  (Tr. 303, 305)  Second, Dr. Raza says that Plaintiff's current GAF is 47; and at the same time says her highest GAF within the last year is 40.  (Tr. 301)  Not only can the current GAF never be higher than the highest GAF score in the past year, but Dr. Raza's assertion overlooks the fact that he assigned Plaintiff a GAF score of 70 only months earlier.  (Tr. 247)  Third, Dr. Raza states that he has treated Plaintiff for "15-20 months," but also states that these limitations began in September, 2005, many years before he began treating her.  (Tr. 301, 305)  Dr. Raza's opinion is also inconsistent with the opinions of Drs. Brown and Devore, and as discussed above, the opinions of Drs. Brown and Devore are supported by substantial objective medical evidence, and thus, are properly entitled to weight.  Finally, it is clear that in the weeks leading up to his MSS, Dr. Raza was unaware Plaintiff was not taking her medications.  (See Tr. 288) ("Dr. Raza just increased her medication because … he was not aware that she wasn't taking her medicines daily.")

Because his opinion is inconsistent with other substantial and well-supported medical opinion evidence, Dr. Raza's opinion is properly discounted.  See Papesh, 786 F.3d at 1132 (noting that an ALJ may properly discount a treating medical source where other medical assessments are supported by better or more thorough medical evidence).

In sum, Dr. Raza's newly submitted opinion evidence does not undermine this Court's confidence in the ALJ's final decision because: (1) it was fully considered by the Appeals Council; (2) it is internally inconsistent; (3) it is inconsistent with other objective medical evidence the record as a whole; and (4) other medical opinion evidence in the record is more adequately supported by objective evidence.[8]

## V. Conclusion

For all of the foregoing reasons, Plaintiff's arguments that the Commissioner erred are unavailing. The Commissioner thoroughly evaluated the medical and opinion evidence in this case, and gave Plaintiff a full and fair hearing. The Commissioner's conclusions in this matter are supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Administrative Law Judge in this matter be AFFIRMED.

A separate Judgment shall be entered this day.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of December, 2015

---

[8] Plaintiff also points to post-hearing evidence submitted by Dr. Franco Sicuro, M.D., who was conducting a psychiatric pharmacological research trial during this time in which Plaintiff was involved. Dr. Sicuro suggests that Plaintiff "has been unable to effectively maintain any form of employment." (Tr. 298) This statement does not undermine the Court's confidence in the ALJ's final decision. First, it does not opine as to Plaintiff's future ability to work or discuss impairment duration. Second, even if it did so opine, that is a determination solely within the purview of the Commissioner. House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007). Third, the statement is conclusory, citing to no medical evidence at all. See Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010). Fourth, it is contrary to the weight of medical evidence in the case, along with Dr. Raza's conclusions, as discussed above.